1
2
3
4
5
6
7
8
9
10                 UNITED STATES DISTRICT COURT
11             SOUTHERN DISTRICT OF CALIFORNIA
12
13 RAUL JESSE GONZALEZ, JR.,       | CASE NO: 11-CV-2846 W (WVG)
14                   Plaintiff, | **ORDER GRANTING IN PART**
15    v.                         | **AND DENYING IN PART**
16                             | **DEFENDANTS' MOTION FOR**
    JUAN ALVA, et al.,               | **PARTIAL SUMMARY**
17                             | **JUDGMENT [DOC. 33]**
                   Defendants. |
18
19
20       Pending before the Court is Defendants' motion for partial summary judgment.
21 (*MPSJ* [Doc. 33]; *see also Reply* [Doc. 45].)   Plaintiff Raul Jesse Gonzalez, Jr.
22 ("Gonzalez") opposes. (*Opp'n* [Doc. 38].)
23       The Court decides the matter on the papers submitted and without oral
24 argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons stated below, the
25 Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.
26 //
27 //
28

1   I.    BACKGROUND

2        Plaintiff is a seventeen-year-old boy named Raul Jesse Gonzalez, Jr., from

3   Escondido, California.  (*Compl.* [Doc. 1] ¶ 11.)  On the evening of July 28, 2011[1],

4   Gonzalez's brother and father got into an altercation outside of the family's home,

5   which Gonzalez attempted to break up.  (*Id.* ¶ 12; *see also Opp'n* 1.)   Gonzalez,

6   accompanied by his three siblings and two other friends, walked away from the scene

7   shortly after his mother called the Escondido Police Department ("EPD").  (*Compl.* ¶¶

8   13-14.)

9        While en route to the Gonzalez home, several EPD officers, including Defendant

10  Juan Alva ("Alva"), noticed Gonzalez walking down the street.  (*Opp'n Ex. N Alva*

11  *Deposition* 66:5-67:2.)  Alva exited his police car and approached Gonzalez, who ran

12  across the street into a parking lot of a shopping mall.  (*MPSJ* 2; *Opp'n* 1.)  Without

13  warning, Alva deployed an X-26 Taser on Gonzalez while he ran away from Alva.

14  (*Opp'n Ex. L Gonzalez Deposition* 128:12-17.)  The Taser immobilized Gonzalez mid-run,

15  causing him to fall face-first onto the pavement.  (*Opp'n Ex. T-7 Incident Report*.)

16  Gonzalez fractured several teeth, received abrasions to his face and hands, and broke

17  his jaw.  (*Compl.* ¶ 22.)

18       On December 7, 2011, Gonzalez commenced this action against Alva, the City

19  of Escondido ("Escondido"), EPD chief Jim Maher ("Maher"), and DOES 1-20,

20  alleging: (1) violation of Gonzalez's Fourth Amendment right to be free from excessive

21  force; (2) battery; (3) failure to properly screen and hire; (4) failure to properly train;

22  (5) failure to supervise and discipline; (6) Monell municipal liability;(7) intentional

23

24

25

26       _____

         [1] There is some uncertainty as to whether the relevant events occurred on July 28, 2011,
27  or July 29, 2011.  (*Compare Compl.* ¶ 11 with *MPSJ* 1.)  However, because neither party
    addresses this discrepancy and because it does not appear to affect the substance of the pending
28  motion, the Court will, for the purposes of this order, assume that the events occurred on July
    28, 2011.

1  inflection of emotional distress; (8) negligence; and (9) violation of California Civil

2  Code § 52.1.[2] The complaint also requests injunctive relief. (*Compl.* ¶¶ 94-96.)

3      On February 22, 2013, Escondido and Maher (collectively, "Defendants") moved

4  for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c),

5  contending that they are entitled to judgment given that: (1) Escondido did not have

6  an unconstitutional policy causing a constitutional violation and therefore Defendants

7  cannot be held liable for any injury or damages Gonzalez alleges; (2) Maher did not

8  participate in the tasering, nor did he use, or cause to be used any force upon Gonzalez

9  and therefore cannot be held personally liable for any injury or damages Gonzalez

10  alleges; (3) there is no direct cause of action for negligence against Escondido; and (4)

11  they are not liable for § 52.1 violations.  (*See MSPJ* 6-7.)

12

13  **II.   LEGAL STANDARD**

14      Summary judgment is appropriate under Rule 56(c) where the moving party

15  demonstrates the absence of a genuine issue of material fact and entitlement to

16  judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

17  U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law,

18  it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

19  248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about

20  a material fact is genuine if "the evidence is such that a reasonable jury could return a

21  verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

22      A party seeking summary judgment always bears the initial burden of establishing

23  the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving

24  party can satisfy this burden in two ways: (1) by presenting evidence that negates an

25  ───────────────

26      [2] Plaintiff's first cause of action is brought under 42 U.S.C. § 1983 against Defendants
    Alva and DOES 1-20.  Plaintiff's second and seventh causes of action are brought against

27  Defendant Alva only.  Plaintiff's third, fourth, and fifth causes of action are brought under 42
    U.S.C. § 1983 against Defendants Escondido, Maher, and DOES 1-20.  Plaintiff's sixth cause

28  of action is brought under 42 U.S.C. § 1983 against Defendant Escondido only. Plaintiff's eight
    and ninth causes of action are brought against all named Defendants.

1    essential element of the nonmoving party's case; or (2) by demonstrating that the

2    nonmoving party failed to make a showing sufficient to establish an element essential

3    to that party's case on which that party will bear the burden of proof at trial. Id. at 322-

4    23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

5    judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

6    (9th Cir. 1987).

7        "The district court may limit its review to the documents submitted for the

8    purpose of summary judgment and those parts of the record specifically referenced

9    therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.

10   2001). Therefore, the court is not obligated "to scour the record in search of a genuine

11   issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

12   Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

13       If the moving party meets its initial burden, the nonmoving party cannot defeat

14   summary judgment merely by demonstrating "that there is some metaphysical doubt as

15   to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

16   U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th

17   Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of

18   evidence in support of the nonmoving party's position is not sufficient."). Rather, the

19   nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the

20   depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

21   showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting

22   Fed.R.Civ.P. 56(e)).

23       When making this determination, the court must view all inferences drawn from

24   the underlying facts in the light most favorable to the nonmoving party. See

25   Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and

26   the drawing of legitimate inferences from the facts are jury functions, not those of a

27   judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477

28   U.S. at 255.

1  III.   Discussion

2      A.   Failure to Properly Screen and Hire

3  The Supreme Court has stated that it is unclear whether a single hiring decision

4  due to inadequate screening can establish liability.  See Board of County Comm'rs of

5  Bryan County, Oklahoma v. Brown, 520 U.S. 397, 410 (1997).  In cases where a

6  plaintiff identifies only a single instance of inadequate screening, a municipality will face

7  liability only if a full review of the hired officer's record reveals that the particular

8  constitutional violation committed by the hired officer would have been a "plainly

9  obvious consequence" of the hiring decision.  Id. at 412-13.  "[A] finding of culpability

10 cannot depend on the mere probability that any officer inadequately screened will

11 inflict any constitutional injury.  Rather, it must depend on a finding that this officer

12 was highly like to inflict the particular injury suffered by the plaintiff."  Id. at 412.

13     Gonzalez alleges that Defendants' screening and hiring policies for EPD officers

14 were deliberately indifferent to the constitutional rights of San Diego citizens, including

15 his own.  (Compl. ¶¶ 46-47.)  Defendants contend that there is no evidence that

16 Escondido had an unconstitutional policy of screening and hiring.[3]  (MPSJ 9.)  The

17 Court agrees with Defendants.

18     The "plainly obvious consequence" standard is exceptionally stringent.   In

19 Brown, the Supreme Court found that the officer's record insufficiently related to an

20 excessive force complaint even though it contained a conviction for assault and battery.

21 Brown, 520 U.S. at 413-414.  Other courts applying the rule have been equally strict

22 in application of the "plainly obvious consequence" standard.  See Morris v. Crawford

23 Cnty., 299 F.3d 919, 924 (8th Cir. 2002) ("[M]unicipalities are not necessarily liable

24 even when an applicant's background contains complaints of physical violence,

25

26     [3] In their reply, Defendants argue that the failure to properly screen and failure
to properly hire police officers are two separate inquiries.  However, given that
27 Defendants fail to cite any authority directing such a two-prong analysis, this Court will
proceed under the Supreme Court's seminal decision Board of County Comm'rs of
28 Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997), which addresses inadequate
screening and inadequate hiring simultaneously.

1 including acts of aggression and assault."); see also Gros v. City of Grand Prairie, 209

2 F.3d 431, 434 (5th Cir. 2000) ("[P]laintiffs cannot [defeat] summary judgment merely

3 because there was a probability that a poorly-screened officer would violate their

4 protected rights. . . they must show that the hired officer was highly likely to inflict the

5 particular type of injury suffered by them.").

6       Here, Gonzalez argues that "when Defendants hired Juan Alva, there were

7 numerous, obvious signs that he was not fit to perform the duties and functions of a

8 police officer." (Opp'n 22.)  Gonzalez suggests that "notable warnings" included

9 "evidence of prior misconduct in past jobs, . . . Alva's termination as a security guard

10 by Sears Department Store for his use of Oleoresin Capsicum spray on two individuals

11 in violation of store policy; Escondido Police Department polygrapher Mark Martin's

12 concerns regarding Alva's truthfulness, maturity and capability to perform as a police

13 officer; glaring inconsistencies between Alva's employment application and his

14 admissions during polygraph examination; and concerns regarding Alva's judgment and

15 maturity noted by Escondido Police Department Gray, who conducted the background

16 investigation of Alva." (Opp'n Ex. G 6; Ex. N 10-15.)  Defendants do not dispute they

17 were privy to this information before hiring Alva.  Even assuming that all of the

18 foregoing evidence is admissible, it does not meet the rigorous "plainly obvious

19 consequence" standard.

20       Gonzalez has failed to explain to the Court how the evidence above shows that

21 Alva's alleged unconstitutional tasering was the "plainly obvious consequence" of hiring

22 Alva.  Gonzalez does not demonstrate a direct causal link between Defendants' hiring

23 decision and Gonzalez's specific constitutional injury.  Evidence indicating that Alva

24 had a violent past is not enough to show he was highly likely to inflict the particular

25 type of injury suffered by Gonzalez here.  Moreover, concerns about Alva's truthfulness

26 and maturity fail to demonstrate that Alva's alleged use of excessive force on Gonzalez

27 was a "plainly obvious consequence" of EPD's hiring decision.  At most, Alva's record

28 demonstrates that Defendants' alleged inadequate screening and hiring here may have

1    increased the possibility that *some* constitutional violation would occur.  However, the

2    record ultimately fails to show a direct link between the alleged screening and hiring

3    inadequacy and the specific constitutional injury Gonzalez suffered.

4        Because Gonzalez has not demonstrated that Defendants decision to hire Alva

5    "reflected a conscious disregard for a high risk that [Alva] would use excessive force in

6    violation of [Gonzalez's] federally protected right," the Court **GRANTS** Defendants'

7    motion for partial summary judgment on this ground.  <u>Brown</u>, 520 U.S. at 415-16.

8

9        **B.    <u>Failure to Properly Train</u>**

10       A municipality's decision not to train employees about their legal duty to avoid

11   violating citizens' constitutional rights may constitute an official government policy for

12   purposes of § 1983 in limited circumstances.  <u>Connick v. Thompson</u>, 131 S. Ct. 1350,

13   1359 (2011).  Where, as here, a plaintiff claims that the municipality has not *directly*

14   inflicted an injury, but has nonetheless caused an employee to do so, rigorous standards

15   of culpability and causation must be applied to ensure that the municipality is not held

16   liable solely for the actions of its employee.  <u>Bryan County</u>, 520 U.S. at 405.  To bring

17   Escondido within the purview of § 1983, Gonzalez must prove that "(1) he was deprived

18   of a constitutional right; (2) the City had a training policy that amounts to deliberate

19   indifference to the constitutional rights of the persons with whom its police officers are

20   likely to come into contact; and (3) his constitutional injury would have been avoided

21   had the City properly trained those officers."  <u>Blankenhorn v. City of Orange</u>, 485 F.3d

22   463, 484 (9th Cir. 2007) (internal quotations and alterations omitted).

23       Gonzalez alleges that Defendants Escondido and Maher failed to adequately train

24   police officers as to the constituional rights of citizens and arrestees, including the

25   proper and constitutional use of the X-26 Taser.  (*Compl.* ¶¶ 52-53.)  Defendants argue

26   that Alva received constitutionally adequate Taser training pursuant to Escondido's

27   written policies.  (*MPSJ* 10.)

28

1   Defendants first contend that Gonzalez has produced no evidence that
2   Escondido's training policy amounts to deliberate indifference to citizen's constitutional
3   rights. Second, Defendants effectively challenge the causation element by arguing that
4   Gonzalez has produced no evidence that shows that Alva received deficient Taser and
5   Use of Force training. (*MPSJ* 10.)

6
7                    **1.**   *Deliberate Indifference*

8        For the purposes of § 1983, a municipality's failure to train its employees in a
9   relevant respect must amount to "deliberate indifference to the rights of persons with
10  whom the [untrained employees] come into contact." <u>Connick</u> 131 S.Ct. at 1359
11  (citing <u>Canton</u>, 489 U.S. at 388). Deliberate indifference is "a stringent standard of
12  fault, requiring proof that a municipal actor disregarded a known or obvious
13  consequence of his action." <u>Bryan County</u>, 520 U.S. at 410; <u>see</u> <u>also</u> <u>Price v. Sery</u>, 513
14  F.3d 962 (9th Cir. 2008) (requiring plaintiffs to "demonstrate a conscious or deliberate
15  choice on the part of the municipality in order to prevail on a failure to train claim."
16  (internal quotations omitted)). "Thus, when city policymakers are on actual or
17  constructive notice that a particular omission in their training program causes city
18  employees to violate citizens' constitutional rights, the city may be deemed deliberately
19  indifferent if the policy makers choose to retain that program." <u>Connick</u>, 131 S.Ct. at
20  1360 (citing <u>Bryan County</u>, 520 U.S. at 410).

21       Defendants argue that Gonzalez cannot establish that the EPD training program
22  shows deliberate indifference to citizen's constitutional rights because there is no
23  evidence that the City's training policies are unconstitutional. (*MPSJ* 10-11.) Gonzalez
24  counters, suggesting that Defendants' failure to update its training policies, specifically
25  Instruction No. 1.29, in light of the Ninth Circuit's decision in <u>Bryan v. MacPherson</u>,
26  630 F.3d 805 (9th Cir. 2010), demonstrates deliberate indifference.

27       Even assuming that Defendants' policy failure to update its training policies left
28  these policies unconstitutional, there still must be evidence that the Defendants were

1    on notice of this deficiency. <u>Connick</u>, 131 S.Ct. at 1360. Here, issues of material fact
2    exist regarding whether or not Defendants had notice of these deficiencies. Gonzalez
3    suggests that "a two-year delay in updating its training to adhere to the Constitutional
4    demands of a Ninth Circuit decision is unreasonable." (*Opp'n* 32.) However,
5    Gonzalez's opposition is notably devoid of any evidence or argument as to when
6    Defendants were put on actual or constructive notice of the <u>Bryan</u> decision. Similarly,
7    Defendants have not presented any evidence regarding when they were put on notice
8    of the <u>Bryan</u> decision. There is no question that Defendants became aware of the <u>Bryan</u>
9    decision at some point, and eventually changed their policies in response thereto.
10   (*Opp'n Ex. N* 52: 1-25; *Opp'n Ex. O* 83: 4-20) Nonetheless, neither party has presented
11   any evidence or argument as to when Defendants received notice of this decision.

12       In light of the foregoing, the Court **DENIES** Defendants' motion for partial
13   summary judgment on this ground.

14

15       **2.**   *Causation*

16       California courts repeatedly affirm the Supreme Court's requirement of a "direct
17   causal link" between an alleged constitutional deprivation and a municipal policy to
18   find the municipality liable under § 1983. <u>Canton</u>, 489 U.S. at 385; <u>see also</u>  <u>Monell</u>,
19   436 U.S. 694 ("[I]t is when execution of a government's policy . . . inflicts the injury
20   that the government as an entity is responsible under § 1983."); <u>Oviatt v. Pearce</u>, 954
21   F.2d 1470, 1473-74 (9th Cir. 1992) ("A local government entity is liable under § 1983
22   when action pursual to official municipal policy of some nature causes a constitutional
23   tort." (internal quotations and alterations omitted)); <u>Thompson v. City of Los Angeles</u>,
24   885 F.2d 1439, 1444 (9th Cir. 1989) ("Only if a plaintiff shows that his injury resulted
25   from a permanent and well settled practice may liability attach for injury resulting from
26   a local government custom.").

27       Defendants' argument that there is no evidence that Officer Alva did not receive
28   deficient training is contradicted by the record. Gonzalez argues that Alva was not

trained in the constitutional use of a Taser when he shot Gonzalez, and therefore Alva deployed his Taser in a manner violating <u>Bryan</u>. (*Opp'n* 33.)  In fact, Gonzalez argues that "Defendants had not provided training to Alva that Tasers should generally not be used on passive resistors or individuals fleeing from minor non-violent offenses," citing <u>Bryan</u>. (*Id.*)  Gonzalez also argues that Defendants did not instruct Alva that the Taser should only be used when "the objective facts establish that a suspect poses an immediate threat to the safety of the officer, others or themselves or who if fleeing from a serious offense." (*Id.* (citing *Ex. CC*)).  Defendant claims that if Alva had been properly trained in the aforementioned standards, he would not have used the Taser "in a manner that violated <u>Bryan</u>'s standards." (*Id.*)  Defendants do not seriously contest this theory of causation, as their argument hinges on the constitutionality of the underlying policy.

Therefore, the Court **DENIES** Defendants' motion for partial summary judgment on this ground.

### C.   <u>Failure to Properly Supervise and Discipline</u>

A plaintiff may establish municipal liability if it can prove that a municipality's omissions, such as a failure to supervise and discipline, render it responsible for a constitutional violation even though the municipality's policies are facially constitutional. <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1186 (9th Cir. 2002). In order to do so, a plaintiff must show that (1) the municipality's deliberate indifference to citizens' constitutional rights led to its failure to supervise or discipline, and (2) the failure to supervise or discipline caused a municipal employee to commit the constitutional violation the plaintiff suffered. <u>Id.</u>  To prove a municipality's deliberate indifference, plaintiff must show that the municipality was on actual or constructive notice that its failure to supervise or discipline would likely result in a constitutional violation. <u>Id.</u>

Defendant's argument that "there is no evidence that the City had a custom or policy of failing to supervise or punish unconstitutional and excessive uses of force" is

1  contradicted by the record. (*MPSJ* 11.) Gonzalez claims that Defendants "ignored the
2  information they had regarding the excessive and unconstitutional use of the Taser by
3  their officers." (*Opp'n* 34.)  Specifically, Gonzalez argues that Defendants were on
4  notice of Alva's propensity to use his Taser inappropriately well before the incident in
5  question. (*Opp'n* 34; *Opp'n Exs. V, W, Y, Z*).  Indeed, these four instances of Taser use
6  are arguably evidence of Alva's repeated violations of the Use of Force policy and Taser
7  policy (Department Instruction No. 1.29) that was in effect at the time.    Such
8  evidence, when viewed in the light most favorable to Gonzalez, could lead a reasonable
9  jury to conclude that Defendants were deliberately indifferent.

10      Defendants attempt to discredit Gonzalez's proffered evidence is unavailing.
11  Defendants contend that these four instances of Taser use by Alva were never
12  challenged and never "deemed unconstitutional or excessive" and thus provide no
13  evidence that Alva's prior Taser uses should have lead to discipline. (*Reply* 9.) First,
14  these instances of Taser use may provide notice to Defendants of Alva's propensity to
15  deploy his Taser even if they were never challenged.  Defendants do not and cannot
16  seriously contend that their responsibility to supervise and discipline extends only to
17  officer misconduct which is challenged.  Second, these instances of Taser use need not
18  be "deemed unconstitutional or excessive" to provide notice of potential future
19  violations.  The law does not require that these instances be illegal in and of
20  themselves: it need only put defendants on notice.  In light of this evidence, and
21  because "[w]hether a local government has displayed a policy of deliberate indifference
22  to the constitutional rights of its citizens is generally a jury question," summary
23  judgment is inappropriate here.  <u>Gibson</u>, 290 F.3d at 1195.

24      In light of the foregoing, the Court **DENIES** Defendants' motion for partial
25  summary judgment on this ground.
26  //
27  //
28  //

### D.    Maher's Liability for Constitutional Violations

A supervisory officer may be found liable in his individual capacity if he knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury. <u>Dubner v. City & Cnty. of San Francisco</u>, 266 F.3d 959, 968 (9th Cir. 2001); <u>see also</u> <u>Watkins v. City of Oakland</u>, 145 F.3d 1087, 1093 (9th Cir. 1998); <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991).  Supervisory liability also applies against an officer in his individual capacity for the officer's "own culpable action or inaction in the training, supervision, or control of his subordinates," <u>Clay v. Conlee</u>, 815 F.2d 1164, 1170 (8th Cir. 1987), for his "acquiescence in the constitutional deprivations of which [the] complaint is made," <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1528 (10th Cir. 1988) (internal quotations omitted); or for conduct that shows a "reckless or callous indifference to the rights of others." <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1163 (1st Cir. 1989); <u>see also</u> <u>Larez</u>, 946 F.2d at 646.

Defendants argue that Defendant Maher is entitled to summary judgment as he is not liable in his individual or official capacity for constitutional injuries.  (*MPSJ* 14-15.)  Defendants further argue that Maher cannot be found liable in his individual capacity because there is no evidence indicating that he was personally involved in Gonzalez's tasering.  (*MPSJ* 14.)  Defendants also maintain that there is no evidence demonstrating that Maher was deliberately indifferent to possible constitutional violations committed by EPD officers.  (*Id*.)

Although it is unclear whether Gonzalez intended to bring his allegations against Maher as an individual or as an official, (*See Compl.* ¶¶ 7, 45, 52, 59, 84, 89), the Supreme Court has noted that "[i]n many cases the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985).  In such cases, such as the present matter, the "course of proceedings" will indicate the nature of the liability sought to be imposed. <u>Id.</u>; <u>Brandon v. Holt</u>, 469 U.S. 464, 469 (1985).  Since this question of liability is

1    typically answered during "the usual process of pleadings and pretrial orders that occur
2    in all litigation in federal district courts," McRorie v. Shimoda, 795 F.2d 780, 783 n. 5
3    (9th Cir. 1986), the Court will consider each theory of liability in turn.

4           Defendants arguments that there is no evidence demonstrating Maher's personal
5    involvement in the tasering or deliberate indifference are unpersuasive. Maher's alleged
6    lack of personal involvement in the tasering is irrelevant here because supervisory
7    liability for an official in his individual capacity does not require personal involvement
8    in the constitutional violation per se. See, e.g., Dubner, 266 F.3d at 968. Moreover,
9    a reasonable jury could find that Maher, as Chief, "knew or reasonably should have
10   known" about Alva's allegedly inappropriate Taser use leading up to the incident in
11   question. Larez, 946 F.2d at 646. In addition, a reasonable jury could find that by not
12   reviewing the Department's Use of Force Committee findings regarding Alva's use of
13   force, Maher is culpable for constitutional violations due to his "inaction in the training,
14   supervision or control of his subordinates." Id. When viewed in the light most favorable
15   to Gonzalez, the fact that Maher arguably "knew or reasonably should have known"
16   about all of the alleged constitutional violations exposes Maher to liability in his
17   individual capacity for each alleged violation.

18          Therefore, the Court **DENIES** Defendants' motion for partial summary judgment
19   with respect to Defendant Maher's liability in his individual capacity.

20          Defendants also argue that Maher cannot be found liable in his official capacity.
21   (*MPSJ* 15.) Defendants argument rests on the assumption that "the City is not liable
22   for any constitutional violations under the facts of this case." (*MPSJ* 15.) However,
23   Gonzalez's constitutional claims have not been dismissed at this point in the litigation.
24   In light of the foregoing, the Court **DENIES** Defendants' motion for partial summary
25   judgment with respect to Defendant Maher's liability in his official capacity.
26   //
27   //
28   //

1    **E.    Monell Liability**

2    Under Monell, local governmental entities may be sued for constitutional

3    deprivations suffered as a result of governmental custom. Monell, 436 U.S. at 690-691;

4    see also Pitts v. Cnty. of Kern, 17 Cal. 4th 340, 349 (1998) (noting that local

5    governmental entities include cities.) A plaintiff must demonstrate that the local

6    governmental entity, through deliberate conduct, was the "moving force" between the

7    constitutional injury suffered. Id.; see also Bryan County, 520 U.S. at 404. A plaintiff

8    may show "deliberate conduct" by producing evidence establishing that the

9    governmental entity was deliberately indifferent to the occurrence of constitutional

10   violations. Id. Deliberate indifference "requir[es] proof that a municipal actor

11   disregarded a known or obvious consequence of his action." Id. at 397.

12   In his sixth cause of action, Gonzalez appears to allege two separate theories of

13   Monell liability. First, he accuses the City of Escondido of being deliberately indifferent

14   to the widespread and allegedly inappropriate use of Tasers by its officers. (Compl. ¶

15   70.) Next, he claims that Escondido was deliberately indifferent because it "failed to

16   set forth appropriate policy regarding the use of the Taser as required by" Bryan.

17   Defendants move for summary judgment, arguing that there is no evidence that the

18   relevant policies are unconstitutional or have been implemented in an unconstitutional

19   manner. (MPSJ 13-14.)

20   With respect to Defendant's alleged "deliberate indifference" in not adopting a

21   Taser policy that comports with the requirements of Bryan, the Court has already

22   explained that questions of fact surrounding notice remain unresolved. Namely, the

23   present record does not conclusively demonstrate when Defendants became aware of

24   the Bryan decision. Without any evidence as to the date of notice, the Court can not

25   determine whether or not Defendants were deliberately indifferent to their heightened

26   responsibilities under the Bryan decision.

27   Defendants argument that there is no evidence that its policy has been

28   implemented in an unconstitutional way is refuted by evidence presented in Gonzalez's

opposition.   Gonzalez claims that "defendant was deliberately indifferent to the widespread use of Tasers by its officers" and maintained a "*de facto* policy of allowing its officers to indiscriminately and improperly use the Taser gun." (*Opp'n* 36.)  In support of these claims, Gonzalez submits a laundry list of alleged improper uses of Tasers by the various officers, including Alva.   (*Id.* 9-17; *Opp'n Exs. T, V, W, X, Y, Z, BB.*) Defendants present no evidence to refute these alleged improper uses but instead argue that Plaintiffs have not provided proof, including expert testimony, that these alleged incidents were improper. (*Reply* 11.)   Because Defendants fail to address any of the incidents in any detail, the record when viewed in the light most favorable to Gonzalez suggests that these alleged violations arguably violate the Defendants Taser policies in place at the time of the incidents.    Thus, Defendants have not refuted Gonzalez's evidence that Defendants were not in fact implementing their policy.

In light of the foregoing, the Court **DENIES** Defendants' motion for summary judgment on this ground.

### F.   Negligence

The Government Claims Act governs all liability against public entities in California.[4]  See Clark v. Optical Coating Lab., Inc., 165 Cal. App. 4th 150, 182 (2008); Cnty. of Los Angeles v. Super. Ct., 127 Cal. App. 4th 1263, 1267 (2005). Section 815 of the Act concerns the general liability of public entities and states that "a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815(a). This section applies "[e]xcept as otherwise provided by statute." Id.  The Government Claims Act includes "city" in its definition of public entity.  Cal. Govt. Code. § 811.2.   Accordingly, in determining whether a city is directly liable for negligence, California courts consistently hold that liability must be based on a specific

---

[4] The Government Claims Act was formerly called the Tort Claims Act and includes California Government Code §§ 810 to 998.3.  35A Cal. Jur. 3d Government Tort Liability § 1.

statute which articulates the circumstances in which the city will be liable, or at least creates some specific duty of care apart from those of general tort principles. <u>Eastburn v. Reg'l Fire Prot. Auth.</u>, 31 Cal. 4th 1175, 1183 (2003); <u>see</u> <u>also</u> <u>de Villers v. Cnty. of San Diego</u>, 156 Cal. App. 4th 238, 262 (2007); <u>Zelig v. Cnty. of Los Angeles</u>, 27 Cal. 4th 1112, 1127 (2002).

Gonzalez alleges that Defendants breached their duty of care to Alva by failing to properly train and supervise EPD officers with respect to Taser usage, resulting in Gonzalez's injuries. (*Compl.* ¶¶ 84-85.) Defendants argue that Escondido is entitled to summary judgment given Gonzalez's failure to allege a statutory basis for finding Escondido directly liable for negligence.[5] (*MPSJ* 15.)

Defendants accurately point out that Gonzalez failed to identify a statutory basis for a direct negligence claim. (*Reply* 12; *MPSJ* 15-16.) Therefore, this Court **GRANTS** Defendants' motion for partial summary judgment to the extent that Gonzalez claims that Escondido is directly liable for negligence.

### G.   California Civil Code § 52.1

Defendants' entire § 52.1 argument is based on the assumption that their motion would be granted with respect to Gonzalez's § 1983 claims. (*MPSJ* 16.)   Because the Court has not made a final determination as to Gonzalez's § 1983 claims, the Court **DENIES** Defendants' motion on this ground.

## IV.   CONCLUSION AND ORDER

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for partial summary judgment [Doc. 33], and **ORDERS** as follows:

---

[5] Since Defendants do not dispute whether Escondido may be vicariously liable for negligence and do not move for partial summary judgment on that ground, the Court will not consider a *respondeat superior* theory of liability for the purposes of this order.

11cv2846w

1      •     Defendants' motion for partial summary judgment with respect to failure
2            to properly screen and hire is **GRANTED**.
3      •     Defendants' motion for partial summary judgment with respect to failure
4            to properly train is **DENIED**.
5      •     Defendants' motion for partial summary judgment with respect to failure
6            to properly supervise and discipline is **DENIED**.
7      •     Defendants' motion for partial summary judgment with respect to Maher's
8            liability in his individual and official capacity is **DENIED**.
9      •     Defendants' motion for partial summary judgment with respect to <u>Monell</u>
10           liability for maintaining unconstitutional policies is **DENIED**.
11      •     Defendants' motion for partial summary judgment with respect to a direct
12           liability theory of negligence is **GRANTED**.
13      •     Defendants' motion for partial summary judgment with respect to
14           California Civil Code § 52.1 is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  July 19, 2013**

_____
Hon. Thomas J. Whelan
United States District Judge